UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL J. MARALDO, STEPHEN J. MARALDO,<br><br>            Plaintiffs,<br><br>     vs.<br><br>LIFE INSURANCE COMPANY OF THE SOUTHWEST a/k/a "LSW," EQUITA FINANCIAL AND INSURANCE SERVICES, et al.<br><br>            Defendants. | Case No.: 11-CV-4972-YGR<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS WITH LEAVE TO AMEND AND GRANTING MOTION TO STRIKE WITHOUT LEAVE TO AMEND** |

Plaintiffs Michael J. Maraldo and Stephen J. Maraldo ("Plaintiffs") bring this class action complaint for fraud and unfair business practices against Defendants Life Insurance Company of the Southwest ("LSW") and Equita Financial and Insurance Services ("Equita"). Plaintiffs allege three claims: (1) fraud and deceit; (2) unfair business practices under several state statutes including California Business & Professions Code §17200; and (3) rescission and restitution.

Defendants LSW and Equita have each filed separate motions to dismiss all claims alleged in the Complaint on the grounds that Plaintiffs fail to state a claim and do not allege fraud with sufficient particularity per Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure. Defendant LSW moves to dismiss under Rule 12(b)(1) on the additional grounds that the Court lacks jurisdiction over the claims because they are not ripe. Finally, Defendant LSW also brings a separate motion to strike claims for punitive damages.

Having carefully considered the papers submitted and the pleadings in this action, and for the reasons set forth below, the Court hereby:

**GRANTS IN PART AND DENIES IN PART** the Motions to Dismiss, with leave to amend as stated herein; and

**GRANTS** the motion to strike punitive damages, without leave to amend, based upon Plaintiffs' withdrawal of their prayer for punitive damages.[1]

## SUMMARY OF ALLEGATIONS

Plaintiffs' Complaint is alleged as a putative class action for fraud and statutory unfair business practices. Plaintiffs allege that they represent a putative class of all California, Texas, Arizona and Florida residents who purchased "LSW policies" on or after January 1, 2005. (Complaint [Dkt. No. 1] ¶ 26(a).)

Plaintiffs set forth a number of allegations concerning the overall "vanishing premium" scheme in the introductory and general facts sections of their Complaint. Plaintiffs allege that Defendants train and reward their agents to market life insurance using a "vanishing premium" sales presentation. (Complaint ¶¶ 1, 15.) The "vanishing premium" concept is that after a certain

---

[1] Pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7-1(b), the Court finds that this motion, which has been noticed for hearing on April 3, 2012, is appropriate for decision without oral argument. Accordingly, the Court **VACATES** the hearing set for April 3, 2012.

2

number of years (here, 6-8 years), the premiums would be completely paid by the interest accruing on the policies such that no further out-of-pocket payments would be required from the purchasers to maintain the policy. (Complaint ¶¶1, 15.)

Plaintiffs generally allege that, as part of the sales scheme and conspiracy, Defendants supplied their agents with illustrations or computer software for generating them, to induce potential customers to buy based upon the representations of vanishing payments. (Complaint ¶¶ 2, 16.) Defendants' illustrations projected policy values and premium payments based upon interest, mortality and expense rates that Defendants knew were not realistic, and Defendants did not disclose the basis for these calculations. (Complaint ¶¶ 3, 17, 18.) Plaintiffs allege that Defendants omitted material information, specifically that the policy would not accumulate sufficient interest to pay the future premiums and the cash premiums would not vanish. (Complaint ¶¶ 4, 18.) Plaintiffs alleged that Defendant used illustrated dividends and interest rates that they knew were not supported or sustainable, and that Defendants knew at the time that the policies would not be credited with sufficient income to permit the cessation of premium payments as represented to customers. (Complaint ¶ 18.) Plaintiffs allege Defendants knew and did not disclose that interest crediting rates would be reduced in the future, and policy holders would be required to make several years of additional payments beyond the represented vanish year in order to keep the policies in force. (Complaint ¶¶ 4, 18, 20.)

In the portion of the Complaint labeled "Facts Specific to Each Plaintiff," Plaintiffs allege that insurance agent John Lloyd ("Lloyd") sold them life insurance policies. Stephen met with Lloyd and purchased a Universal Life policy "from the Equita Financial Group and Life Insurance Company of the Southwest" in April 2008. (Complaint ¶25(1).) Michael met with Lloyd in April 2009 and purchased the same type of policy. Plaintiffs both allege Lloyd represented to them that

3

the policy was actually a retirement product with a life insurance "add-on" which would be completely "paid up" (requiring no further premiums) in only seven years. They allege that Lloyd knew this was false and failed to disclose the falsity to them. (Complaint ¶¶ 25(1), 23, 24, 25 (2).) They do not allege or incorporate the allegations in the general sections preceding these paragraphs, and thus do not state whether Lloyd, or anyone else, showed them illustrations or any other details of the sales presentation.

## DISCUSSION

Defendant LSW seeks to dismiss the action based on lack of jurisdiction due to unripeness, failure to state a claim, and failure to state fraud with particularity. (Fed. Rules Civ.. Proc. 12(b)(1), 12(b)(6), and 9(b).) Defendant Equita takes up the latter two arguments in its motion. Because the Court's jurisdiction must be examined before other issues are decided, the Court reviews the ripeness question first.

**I. Ripeness**

The "ripeness doctrine is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Reno v. Catholic Social Services, Inc.,* 509 U.S. 43, 57 n. 18 (1993). The doctrine is meant to shield the court from being drawn into disputes where review would be premature because the injury is speculative and may never occur. *See Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1121-22 (9th Cir. 2010); *Wolfson v Brammer*, 616 F.3d 1045, 1057 (9th Cir. 2010). Unripe claims are subject to dismissal for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure. *See Ass'n of Am. Med. Colleges v. United States,* 217 F.3d 770, 784 n. 9 (9th Cir.2000). The party asserting federal subject matter jurisdiction bears the burden of proving its existence. *See*

*Kokkonen v. Guardian Life Ins. Co.,* 511 U.S. 375, 377 (1994), *Chandler, supra,* 598 F.3d at 1121-22.

Defendant LSW argues that the policies here have only been in force for two and three years respectively, and the time at which Plaintiffs claim they were told the premiums would "vanish" -- year seven -- has not yet arrived. Whether Plaintiffs will ever be required to pay premiums after that seventh year is subject to a number of contingencies, including interest rates, what they may pay in premiums prior to that time, whether they die before that time, whether they sell the policies to a third party, and so on. Because no demand for a premium payment past the vanishing point has occurred, LSW contends that Plaintiffs' claims are not yet ripe.

By contrast, Plaintiffs argue the claims here are based upon misrepresentations and unsupported assertions that were made at the time they were induced to purchase the policies -- representations and assertions that Defendants are alleged to have known were false or misleading *at the time of purchase*. Plaintiffs each allege that they were led to believe that they were purchasing a policy that was part of a retirement package and that the life insurance portion would be completely "paid up" (requiring no further premiums) in only seven years. (Complaint ¶ 23, 25(2).) Plaintiffs allege that the representations made to them were false and that Lloyd failed to disclose how and why this would not occur. (*Id.*)

Taking these allegations at face value, as the Court must on a motion to dismiss, they sufficiently state a ripe claim. The allegations concern representations made at the time of the sale of the policy which induced purchase of the policy. Thus the fraud claim is not speculative or premature but is based upon a harm that has already occurred. In a case alleging similar claims based upon a "vanishing premium" sales presentation, the court in *Asad v. Hartford Life Ins. Co.*, 116 F. Supp. 2d 960 (N.D. Ill. 2000), found that "[m]isleading the plaintiff as to the meaning of

5

the policy he was considering is a misrepresentation about present, not future, facts." *Id*. at 964; *see also Hignite v. Am. Gen. Life & Acc. Ins. Co.*, 142 F. Supp. 2d 785, 791-92 (N.D. Miss. 2001) (fraud claim regarding "limited pay" policy, as represented by insurance company and agents, relied on projections of abnormally high rates stated an actionable claim for misrepresentation); *Myers v. Guardian Life Ins. Co. of Am., Inc.*, 5 F. Supp. 2d 423, 429, 430 (N.D. Miss. 1998) (false statements about vanishing premiums induced plaintiff to buy policy, stating ripe claim).

LSW cites to other vanishing premium cases wherein the courts there held that the fact that the vanishing date had not yet arrived meant that the claims were not ripe for adjudication. These cases are distinguishable from the claim alleged here. In *Frith*, plaintiffs alleged reliance only on the policies and illustrations themselves, not oral representations in conjunction with the sale. While dismissing the bulk of the action for failure to state a fraud claim, the court also dismissed as to one of the policies that had not yet reached the vanishing date on grounds of ripeness. *Frith v. Guardian Life Ins. Co. of Am.*, 9 F. Supp. 2d 734, 738 (S.D. Tex. 1998). *Frith* does not aid the Court because, unlike *Frith,* the claims here are based upon oral representations of the agent at the time of purchase. Another case cited by LSW, *Gaidon v. Guardian Life Ins. Co. of Am.*, 96 N.Y.2d 201, 210, 750 N.E.2d 1078, 1083 (2001), is likewise unavailing. *Gaidon* concerned whether claims were triggered after a delayed discovery of injury related to a vanishing premium policy, not ripeness of those claims. Finally, the other vanishing premium case cited in support of LSW's ripeness argument, *Williamson v. Indianapolis Life Ins. Co.*, 741 So. 2d 1057, 1060 (Ala. 1999), was one where plaintiff could not provide evidence to support his allegations of fraud at the summary judgment phase. Whether Plaintiffs here can produce evidence to support their allegations is a matter that is not before the Court in this motion.

## II. Motions to Dismiss Under Rules 9(b) and 12(b)(6)

### A. Standards Applicable to the Motions

A motion to dismiss under Rule 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint. *Ileto v. Glock. Inc.*, 349 F.3d 1191, 1199-1200 (9th Cir. 2003). Review is generally limited to the contents of the complaint. *Allarcom Pay Television. Ltd. v. Gen. Instrument Corp.,* 69 F.3d 381, 385 (9th Cir. 1995). All allegations of material fact are taken as true. *Erickson v. Pardus,* 551 U.S. 89, 93, 94 (2007). However, legally conclusory statements, not supported by actual factual allegations, need not be accepted. *See Ashcroft v. Iqbal*, 556 U.S. 662, __, 129 S.Ct. 1937, 1949-50 (2009). A plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and quotations omitted). Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Id.*

A complaint should not be dismissed under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02. However, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 558 (2007). Thus, a motion to dismiss will be granted if the complaint does not proffer enough facts to state a claim for relief that is plausible on its face. *See id.* at 558-59. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has

7

alleged - but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal, supra*, 556 U.S.\_, 129 S.Ct. at 1950.

In actions alleging fraud, "the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). Under Rule 9(b), the complaint must allege specific facts regarding the fraudulent activity, such as the time, date, place, and content of the alleged fraudulent representation, how or why the representation was false or misleading, and in some cases, the identity of the person engaged in the fraud. *In re GlenFed Sec. Litig.*, 42 F.3d 1541, 1547-49 (9th Cir.1994).

### B. Fraud Claim

#### 1. Sufficiency of Fraud Allegations

Defendants argue that Plaintiffs' fraud-based claims are not stated with sufficient particularity to satisfy Rule 9(b). The Complaint makes generalized allegations as to the putative class, and then separately sets forth the facts specific to the named Plaintiffs. In the portion addressed to the named plaintiffs, the Complaint alleges that they met with Lloyd, Defendants' agent, and purchased "Universal Life [policies] from the Equita Financial Group and Life Insurance Company of the Southwest" based on vanishing premium representations (Stephen in April of 2008 and Michael in April of 2009). (Complaint ¶¶25(1), 23, 24, 25(2).) Plaintiffs allege that Lloyd represented to each of them that the policy would be completely "paid up" and require no further premiums after seven years, knowing that such statement was false but not disclosing how and why this would not occur. (Complaint ¶¶25(1), 23, 24, 25 (2).)

While these allegations are sufficiently particular as to the time, date and person making the alleged misrepresentation, they are not sufficiently particular as to the content of the fraudulent misrepresentation and how or why the representation was false or misleading. The

allegations specific to the named plaintiffs simply conclude that Lloyd was "Defendants'" agent and that he knew the representation that the policy would be "paid up" after seven years was false.

The Court notes that the allegations in the general introductory and class-wide allegations paragraphs (Complaint ¶1-5, 15-20) offer more specifics as to how and why statements of this kind would be false and misleading, and why "Defendants" knew they were. In the "Facts Applicable to All Members of the Putative Class" section, the Complaint alleges, *inter alia*, that:

(1) Defendants' used illustrations of projected policy values and premium payments based upon interest, mortality and expense rates that they knew were not realistic and did not disclose the basis for these calculations (Complaint ¶¶17, 18);

(2) Defendants omitted material information that the policy would not accumulate sufficient interest to pay the future premiums and the cash premiums would not vanish as illustrated (Complaint ¶18); and

(3) Defendants knew, but failed to disclose, that the interest crediting rates would be reduced in the future, and policy holders would be required to make several years of additional payments beyond the represented vanish year in order to keep the policies in force (Complaint ¶18, 20).

The allegations specific to the named Plaintiffs make no mention of even being shown illustrations, nor do they offer any details as to what was or was not stated or disclosed to Plaintiffs within those presentations.

It is not sufficient to incorporate the general class-wide allegations in the fraud claim and state no more than that "Defendants" made false and misleading statements and failed to disclose "numerous essential facts to Plaintiffs and the Class, as described in this complaint." (Complaint ¶ 37.) Plaintiffs must allege particularly, as to their own interaction with Defendants, the content of

the alleged fraudulent representation and how or why the representation was false or misleading. To the extent that the illustrations were used in the sales presentations, they must address how they were used and what Plaintiffs were told about them. Further, Plaintiffs must allege the role of each Defendant and the alleged agency relationship with Lloyd in more than a conclusory manner.

The motion to dismiss under Rule 9(b) of the Federal Rules of Civil Procedure is therefore GRANTED and Plaintiffs are given leave to amend to allege facts establishing fraud and deceit with sufficient particularity as to the named plaintiffs.

### 2. Oral Representations Inconsistent With Policies and Illustrations

Defendants argue that the motion to dismiss should be granted for the additional reason that it was not reasonable, as a matter of law, for Plaintiffs to rely on oral representations of an insurance agent that were contradicted by the terms of the insurance policy and illustrations.

In order to demonstrate that the alleged representations of "vanishing" premiums are contradicted by the policies and illustrations, the Court would first have to grant LSW's request for judicial notice. LSW seeks judicial notice of several documents, including: the policies issued to Stephen on or about April 25, 2008, and to Michael on or about April 8, 2009; the illustrations issued to Plaintiffs on or about the same times; and the National Association of Insurance Commissioners' Life Insurance Buyer's Guide. LSW contends that because the complaint refers to the policies and illustrations but does not attach them, the Court must take judicial notice of the actual documents so that the Court can determine that those policies and illustrations contradict the allegations of the complaint.

As a general rule, on a motion to dismiss a court may not consider matters outside the complaint. *See, e.g., Hal Roach Studios, Inc. v. Richard Feiner & Co.,* 896 F.2d 1542, 1555 n. 19

10

(9th Cir.1990). However, a court may consider documents referenced in the complaint, "central" to the claims, and as to which no party questions the authenticity of the copies provided. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005); *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994) (overruled on other grounds in *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1127 (9th Cir. 2002)). The Ninth Circuit has indicated that judicial notice should only be taken sparingly, with caution, and after demonstration of a "high degree of indisputability." *See, e.g., Rivera v Philip Morris, Inc.*, 395 F.3d 1142, 1151 (9th Cir. 2005). Moreover, a court should only take judicial notice of those facts in the documents that are both undisputed and *relevant* to the issues presented in the motion to dismiss. *See Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1025 n.2 (9th Cir. 2006) (declining to take judicial notice of documents where they were not relevant to the resolution of the matter); *Flick v. Liberty Mut. Fire Ins. Co.,* 205 F.3d 386, 392 n. 7 (9th Cir.2000) (same); *Ruiz v. City of Santa Maria,* 160 F.3d 543, 548 n. 13 (9th Cir.1998) (same). Any ambiguity in the documents must be resolved in favor of Plaintiffs at this stage in the proceedings. *See International Audiotext Network, Inc. v. AT & T Co.,* 62 F.3d 69, 72 (2nd Cir. 1995); *Hearn v. R.J. Reynolds Tobacco Co.* 279 F.Supp.2d 1096, 1102 (Dist. Ariz., 2003).

The Court declines to take judicial notice of the documents presented. The gravamen of the complaint here does not concern the actual terms of the policies but is focused on false statements made as part of oral sales presentations. Further, given the lack of specificity in the allegations made by the named plaintiffs here, including that there is no allegation that they were shown illustrations as part of the sales presentation, the illustrations have no relevance to the claims as currently pleaded. Finally, Defendant LSW makes no real effort to demonstrate why the

11

NAIC Buyer's Guide should be the subject of judicial notice in connection with this motion either.[2]

Even if the Court were to take judicial notice of the policies and illustrations, Defendants cannot show that reliance on an oral representation of "vanishing premiums" is unreasonable as a matter of law.  "'Whether reliance [on a misrepresentation] was reasonable is a question of fact for the jury, and may be decided as a matter of law only if the facts permit reasonable minds to come to just one conclusion.'"  *Broberg v. Guardian Life Ins. Co. of Am.*, 171 Cal. App. 4th 912, 921, 90 Cal. Rptr. 3d 225, 232 (2009) *quoting Grisham v. Philip Morris U.S.A., Inc., supra,* 40 Cal.4th 623, 638 (2007).  The allegation that policy purchasers were told that after a certain point they would no longer have to make premium payments out-of-pocket is not inconsistent, on its face, with terms or illustrations showing premium payments being due beyond that point.  *Cf. Broberg v. Guardian Life Ins. Co. of Am.*, 171 Cal. App. 4th 912, 916-17 (2009) (even though plaintiff may be charged with knowledge of the terms policy, nothing in policy was inconsistent with representation that premiums after the a certain point would be paid from earnings on the policy); *Dias v. Nationwide Life Ins. Co.*, 700 F.Supp.2d 1204, 1217 (E.D. Cal. 2010) (actionable misrepresentation was that the policies would generate their own premium payments after a certain point, not that the premiums would no longer be due); *Knouse v. Gen. Am. Life Ins. Co.,* 391 F.3d 907, 913 (8th Cir.2004) (policy provision stating that premiums are payable for a certain number of years "could be read by a reasonable unsophisticated insured as being completely consistent with the agents' alleged representations that the premiums paid by plaintiffs for a limited time, in combination with policy interest and dividends paid, would be sufficient to cover

---

[2] LSW argues on reply that the declaration submitted with Plaintiffs' response to its request for judicial notice contradicts the allegations of the complaint.  Again, the Court is not considering extrinsic evidence in ruling on this motion.  However, such statements may bear on the propriety of any amendment to the complaint that does not account for them.

future premiums."); *Tran v. Metro. Life Ins. Co.*, 408 F.3d 130, 138 (3d Cir. 2005) (question of justifiable reliance on agent's representations of vanishing payments precluded summary judgment). Given the procedural posture of this case, the Court is not positioned to find that reliance on such statements, even if seemingly contradicted by the terms of the policy, is unreasonable as a matter of law.

### 3. Fraud Based Upon Prediction or Opinion

Defendant Equita argues that Plaintiffs' claims are not based on an "existing fact" but only on opinion, prediction or alleged representations of future facts. Equita argues that a claim for fraud cannot be based upon such future predictions or opinions unless they meet the narrow exception in which a defendant holds himself out as specially qualified and the other party is situated such that he may reasonably rely on the former's superior knowledge, citing *Borba v. Thomas*, 70 Cal. App. 3d 144, 152 (1977), and *Cohen v. S & S Constr. Co.*, 151 Cal. App. 3d 941, 946 (1983).

First, "[w]hether a statement is nonactionable opinion or actionable misrepresentation of fact is a question of fact for the jury." *Furla v. Jon Douglas Co.*, 65 Cal. App. 4th 1069, 1081 (1998).

Second, the allegations here do not primarily concern predictions of future events or statements about future actions by some third party. Plaintiffs claim that Defendants knew at the time they made statements about the policies that such statements were false or baseless. Defendants are alleged to have intended customers to rely on their agents' representations in order to induce customers to purchase a policy. "Although it is true that expressions of opinion are ordinarily not actionable, still 'the expression of an opinion not in reality entertained may constitute actionable fraud where it is stated falsely and with intent to deceive.'" *Equitable Life &*

13

*Cas. Ins. Co. v. Lee*, 310 F.2d 262, 267 (9th Cir. 1962) (internal citations omitted). Thus, a representation as to an opinion not actually held may be actionable if made with the intent to deceive. *See* Restatement (Second) of Torts § 525 (1977) ("One who fraudulently makes a misrepresentation of . . . opinion. . . for the purpose of inducing another to act or to refrain from action in reliance upon it, is subject to liability to the other in deceit for pecuniary loss caused to him by his justifiable reliance upon the misrepresentation."), *id.* at Comment f. ("a statement that is in form a prediction or promise as to the future course of events may justifiably be interpreted as a statement that the maker knows of nothing which will make the fulfillment of his prediction or promise impossible or improbable").

Moreover, both *Borba* and *Cohen* indicate that a person with superior knowledge about the matters at issue, such as Defendants' alleged sales agent, puts himself in a position such that his statements could reasonably be relied upon. *See, Cohen, supra,* 151 Cal.App.3d at 946 (sufficient facts pleaded where real estate agents emphasized the development's views in its marketing and held themselves out as experts in establishing and administering homeowner associations and maintaining the aesthetic integrity of their developments); *Borba, supra*, 70 Cal.App.3d at 153 (citing cases where claims were actionable based upon architect's statement that building will not cost more than a certain amount; agent's statement that principal will advance money; corporate agent's statement that particular dividend will be paid within a specified period of time). To the extent that an insurance agent holds himself out as an adviser regarding the insurance policy and represents that the terms mean something other than what they appear on their face, such statements can give rise to a claim for liability. *See Paper Savers v. Nacsa,* 51 Cal. App. 4th 1090, 1104 (1996). Here, Defendants and their agent were in a position of superior knowledge about the policies and indeed are alleged to have known, based on that

superior knowledge, that the representations made to Plaintiffs were false. Plaintiffs, as purchasers of life insurance, were in a position to rely on those representations.

Even taking into account that lack of sufficient particularity in the claims as stated, it does not appear that the claims rest entirely on nonactionable opinion or prediction.[3] Therefore, Equita's argument for dismissal on these grounds fails.

### C. Unfair Business Practices Claim

Plaintiffs allege a claim for unlawful, unfair and fraudulent business practices in violation of California Business and Professions Code §17200, as well as analogous Texas, Florida and Arizona statutes. Plaintiffs allege that Defendants have violated these practices by: (1) misrepresenting the true costs of their policies using a "vanishing premium" device; and (2) selling interest-sensitive whole life policies as investments for retirement knowing that they are inferior investments compared to annuities and mutual funds. The first part of the claim is based on fraud. As set forth above, the Court is granting the motion to dismiss with leave to amend based upon Plaintiffs' failure to allege their fraud-based claims with particularity.

As to the second portion, Defendants argue that the Complaint does not allege in what way the conduct is unlawful, unfair or fraudulent. The Court agrees. Plaintiffs identify no predicate law or policy violated by Defendants' conduct. Further, Plaintiffs do not allege within the specific loss of money or property associated with the claim, as they must in order to state it. *Cf. Kwikset Corp. v. Sup. Ct.*, 51 Cal.4th 310, 317 (2011).

---

[3] Defendant Equita further argues that the fraud claim should be dismissed for failure to allege fraudulent intent. Given that the Court is granting the motion based upon lack of particularity, with leave to amend, the Court declines to reach the question of whether this element is sufficiently alleged at this time. However, Plaintiffs are cautioned that statement of a claim "requires more . . . a formulaic recitation of the elements of a cause of action." *Twombly*, *supra,* 550 U.S. at 555 (citations and quotations omitted).

15

The motion is therefore granted with leave to amend as to the unfair business practices claim.[4]

### D. Rescission and Restitution Claim

Plaintiffs concede in their opposition that rescission and restitution are forms of relief, not an independent claim. Plaintiffs already seek restitution and rescission in their prayer. (*See* Complaint at p. 16, ¶6.) Thus the motion to dismiss this claim is GRANTED without leave to amend.

## V. LSW's Motion to Strike Punitive Damages

LSW moved to strike Plaintiffs' punitive damages claim. In their opposition, Plaintiffs withdrew their request for punitive damages without prejudice to seeking leave to amend should they be able to plead entitlement to them at a later time. The motion is GRANTED as unopposed and the prayer for punitive damages at page 16, line 8 is STRICKEN from the Complaint.

**IT IS SO ORDERED.**

March 30, 2012

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

---

[4] Defendant LSW argued in its moving papers that Plaintiffs did not have standing to bring their unfair business practice claim and that they had disregarded choice-of-law limitations in bringing the claim. Plaintiffs clarified in their opposition that they, as California residents, were only bringing their claims under California Business & Professions Code §17200 et seq. (Oppo. at 24:4-6.) On reply, Defendant LSW suggests that this warrants dismissal of the other portions of the claim based on non-California law as to non-California putative class members, but offers no authority or argument to support dismissal of just this portion. (LSW Reply at 10:19-20). Having failed to do so, the Court declines, at this juncture, to dismiss (or strike) portions of the claim on this basis. However, in amending their complaint, Plaintiffs should address the applicability of the various statutes alleged to have been violated, as well as Plaintiffs' fulfillment of any pre-filing requirements.