UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| MICHAEL J. MARALDO, STEPHEN J. MARALDO, | Case No.: 11-CV-4972-YGR |
| Plaintiffs, | **ORDER GRANTING MOTION TO DISMISS FIRST AMENDED COMPLAINT WITH LEAVE TO AMEND** |
| vs. | |
| LIFE INSURANCE COMPANY OF THE SOUTHWEST A/K/A "LSW," EQUITA FINANCIAL AND INSURANCE SERVICES, ET AL., | |
| Defendants. | |

Plaintiffs Michael J. Maraldo and Stephen J. Maraldo ("Plaintiffs") bring this class action complaint for fraud and unfair business practices against Defendants Life Insurance Company of the Southwest ("LSW") and Equita Financial and Insurance Services ("Equita").  The Court having previously granted Defendants' motions to dismiss with leave to amend, Plaintiffs filed their First Amended Complaint on April 19, 2012.  (Dkt. No. 59 ["FAC"].) Plaintiffs allege two claims: (1) fraud and deceit; and (2) statutory violations for unfair business practices under several state statutes including California Business & Professions Code §17200.

Defendants LSW and Equita have each filed separate motions to dismiss Plaintiffs' claims on the grounds that, despite their amendment of the complaint, Plaintiffs have again failed to state a claim upon which relief can be granted or to allege fraud with sufficient particularity per Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure.

Having carefully considered the parties' arguments, the papers submitted and the pleadings in this action, and for the reasons set forth below, the Court hereby **GRANTS** the Motions to Dismiss with leave to amend.

**BACKGROUND**

Plaintiffs' First Amended Complaint is alleged as a putative class action for fraud and statutory unfair business practices. Plaintiffs allege that they represent a putative class of all California, Texas, Arizona and Florida residents who purchased "LSW policies" on or after January 1, 2005. Plaintiffs allege that Defendants train and reward their agents to market life insurance policies as if they are retirement products that will accumulate substantial funds that the purchaser may withdraw tax-free at the time of retirement. (FAC ¶ 2.) Those agents are trained by Defendants to make oral sales presentations to potential customers setting forth false representations about the benefits of these retirement products, using software and illustrations created by Defendants. (FAC ¶ 3.) Agents are trained to tell customers that, for the first seven years, a portion of their payments would pay for the insurance policy death benefit, but that after approximately seven years the purchaser's payments would have fully funded the insurance policy and that thereafter all payments would be assigned to the retirement vehicle, which would grow at a guaranteed, and high, rate. (FAC ¶¶ 4, 5.) Further, Defendants are alleged to train their agents not to disclose that any withdrawals at retirement will be taxed and will be considered loans required to be paid back to the insurance policy with interest. (FAC ¶ 9.) These representations are made using the illustrations prepared by Defendants which, though they are not always shown to the potential purchasers at the time of the sales presentation, are alleged to be used by the agents in making those presentations. (FAC ¶¶ 7, 12.)

**DISCUSSION**

**I.     Standards Applicable to the Motion**

A motion to dismiss under Rule 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint. *Ileto v. Glock. Inc.*, 349 F.3d 1191, 1199-1200 (9th Cir. 2003). Review is generally limited to the contents of the complaint. *Allarcom Pay Television. Ltd. v. Gen. Instrument Corp.,* 69 F.3d 381, 385 (9th Cir. 1995). All allegations of material fact are taken as true. *Erickson v. Pardus,* 551 U.S. 89, 93, 94 (2007). However, legally conclusory statements, not supported by actual factual allegations, need not be accepted. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

A complaint should not be dismissed under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46. However, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Thus, a motion to dismiss will be granted if the complaint does not proffer enough facts to state a claim for relief that is plausible on its face. *See id.* at 558-59.

Finally, in actions alleging fraud, "the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). Under Rule 9(b), the complaint must allege specific facts regarding the fraudulent activity, such as the time, date, place, and content of the alleged fraudulent representation, how or why the representation was false or misleading, and in some cases, the identity of the person engaged in the fraud. *In re GlenFed Sec. Litig.*, 42 F.3d 1541, 1547-49 (9th Cir.1994). However, the requirements of Rule 9(b) may be relaxed as to matters that are "peculiarly within the opposing party's knowledge"

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

under circumstances where the plaintiff reasonably would not be expected to have knowledge of those facts without the opportunity for discovery. *See Wool v. Tandem Computers, Inc.,* 818 F.2d 1433, 1439 (9th Cir.1987) (citations omitted); *In re Gupta Corp. Sec. Litig.*, 900 F. Supp. 1217, 1228 (N.D. Cal. 1994).

## II.   Fraud Claim

In this Court's prior Order Granting in Part and Denying in Part Motions to Dismiss (Dkt. No. 57, "Order"), the Court noted that Plaintiffs original allegations were that John Lloyd sold them a policy issued by Defendants and made fraudulent disclosures and misrepresentations to them, but the original allegations did not tie John Lloyd's conduct to the general description of the details of the fraudulent scheme in the general allegations section.  (Order at 3-4, 8-9.)  The Court ordered that Plaintiffs:

> allege particularly, as to their own interaction with Defendants, the content of the alleged fraudulent representation and how or why the representation was false or misleading.  To the extent that the illustrations were used in the sales presentations, they must address how they were used and what Plaintiffs were told about them. Further, Plaintiffs must allege the role of each Defendant and the alleged agency relationship with Lloyd in more than a conclusory manner.

(Order at 9-10.)  Defendants LSW and Equita each argue that Plaintiffs have failed to comply with the Court's Order in the FAC does not allege: (1) each Defendant's involvement with the alleged fraud; and (2) each Defendant's agency relationship with Lloyd.

As to the relationship between LSW and Equita and their particular roles in the alleged fraudulent conduct, the FAC does not include sufficient allegations.  "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but 'require[s] plaintiffs to differentiate their allegations when suing more than one defendant ... and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.'"  *Swartz v. KPMG LLP*, 476

United States District Court
Northern District of California

F.3d 756, 764-65 (9th Cir. 2007) (quoting *Haskin v. R.J. Reynolds Tobacco Co.,* 995 F.Supp. 1437, 1439 (M.D.Fla.1998)). In a fraud suit involving multiple defendants, a plaintiff must "identif[y] the role of [each] defendant[ ] in the alleged fraudulent scheme." *Id.* (quoting *Moore v. Kayport Package Express, Inc.,* 885 F.2d 531, 541 (9th Cir.1989).) In the FAC, Equita and LSW are identified as being corporations in the insurance business at the beginning of the complaint (FAC ¶¶ 20, 21) and there is a general allegation that each Defendant was the agent of the other (FAC ¶24). Thereafter, other than a single allegation that plaintiffs "understood" what they were purchasing to be "primarily a retirement product from the Equita Financial Group and Life Insurance Company of the West," all allegations are against "Defendants" collectively (FAC ¶¶ 48, 58.)[1]

Plaintiffs contend that they have offered a reasonably detailed statement of the fraudulent scheme. Without additional discovery, they are not able to allege the specifics of the relationships among LSW, Equita, and their agents Lloyd and Chilman. In the FAC, Plaintiffs have alleged the specifics of the misrepresentations made to them by Lloyd, and how those misrepresentations relate to the illustrations. (FAC ¶¶ 45, 46, 47, 50, 55, 56, 57, 61.) Plaintiffs allege that Lloyd falsely represented certain payment amounts would result in accumulation of a tax-free retirement fund at a much greater interest rate than their current retirement funds, and that Lloyd made those representations using the false illustrations and software provided by "Defendants." (FAC ¶ 46, 50, 55, 56.) These allegations are in addition to specific assertions about when, where and to whom the representations were made. While it is true that the allegations do not specifically restate the general allegations with respect to Lloyd – *e.g.,* that "Defendants" trained *Lloyd* about

_____

[1] In connection with the prior motion, the Court took judicial notice of the policies and illustrations referenced in the original complaint. (Dkt. No. 26.) The Court notes that Defendant Equita is not mentioned in those policy documents, only Defendant LSW.

how to make the presentations; that "Defendants" told *Lloyd* what representations to make and what information to withhold – the allegations do connect Lloyd's alleged conduct to "Defendants" at least with respect to the illustrations and to "Defendants'" insurance policy. Plaintiffs go on to argue that an agency relationship between Lloyd and "Defendants" can be inferred based upon the allegations on a theory of ratification by "Defendants," aiding and abetting liability, or ostensible authority of Lloyd to act on behalf of "Defendants," though none of these theories is pleaded.

As the Court sees it, there are two distinct but intertwined issues: Lloyd's relationship to each defendant, and each defendant's relationship or role in the alleged fraudulent scheme. Lloyd is alleged to be an insurance agent. He sold a policy of insurance to each of the named plaintiffs. Though not specifically alleged, based upon Plaintiffs' arguments in opposition and at the hearing, it appears that the policies were issued by LSW not Equita. In the course of selling those policies, Lloyd and Chilman are alleged to have used misleading illustrations to induce Plaintiffs to purchase an insurance policy, and those illustrations are alleged to have been provided by "Defendants" to Lloyd and Chilman for that purpose.

The allegations here – that Lloyd was an agent who sold Plaintiffs a policy issued by an insurer, based upon misleading illustrations provided by that insurer for purposes of sales presentations – sufficiently allege the insurer's role in the fraudulent scheme.[2] However, the FAC does not sufficiently identify which defendant or defendants are the insurer here, and if both are not the insurer, what was the role of the other defendant.

---

[2] Although LSW argues that such allegations are not sufficient to plead the insurer's liability, their proffered authority on that point is unavailing. *Cf. Loehr v Great Republic Insur.*, 226 Cal.App.3d 727 (1990) ("independent" insurance agent who sold a policy to plaintiff was acting as the *insurer*'s "agent" for liability purposes); *Dias v. Nationwide Life Insur. Co.*, 700 F.Supp.2d 1204, 1220-22 (E.D.Cal. 2010) (insurer "had to answer for" soliciting insurance agent's misrepresentations regarding the policy).

In short, the allegations would appear to be sufficient to allege fraud liability for *an insurer* that trained and instructed its agents to make false and misleading sales presentations using materials created by that insurer.  However, failure to specify the roles of the named defendants by, for example, identifying who issued the policy, who is alleged to have trained Lloyd and other insurance agents, and the like, means that the fraud claim is not stated sufficiently.  Therefore the motion to dismiss must be **GRANTED**.

Plaintiffs indicated in their opposition that they can allege additional facts in a second amended complaint, including that Lloyd was appointed as an insurance agent selling life insurance for LSW; and that Lloyd was a regional manager of Equita Financial who received commissions based upon his participation "in the fraud."  Therefore, the motion is granted **WITH LEAVE TO AMEND** to allow Plaintiffs to allege additional facts and to clarify the respective roles and conduct giving rise to liability for each defendant.  While the Court appreciates that certain details may not be available to Plaintiffs prior to discovery, and a relaxed standard may apply to details that are particularly within Defendants' knowledge, the current allegations are not sufficient to state a claim for fraud liability against each of the named defendants.

**III.    Unfair Business Practices Claim**

Plaintiffs allege a claim for unlawful, unfair and fraudulent business practices in violation of California Business and Professions Code §17200 ("UCL"), as well as analogous Texas, Florida and Arizona statutes.  The Court's prior order required that Plaintiffs "address the applicability of the various statutes alleged to have been violated, as well as Plaintiffs' fulfillment of any pre-filing requirements." (Order at 16, n 4.)  In their FAC, Plaintiffs allege a UCL claim based upon all three prongs of the statute: fraudulent conduct, unlawful conduct, and unfair conduct.

The allegations of unlawful conduct appear to be sufficient insofar as they state a proper predicate of Insurance Code violations as the basis for the UCL claim. *Chabner v. United of Omaha Life Ins. Co.,* 225 F.3d 1042, 1048 (9th Cir. 2000) (distinguishing *Cel-Tech Communications v. Los Angeles Cellular Telephone*, 20 Cal.4th 162, 183 (1999) to hold that section 17200 can form the basis for a private cause of action even if the predicate statute does not).[3] Likewise, the conduct alleged sufficiently states a basis for a claim of unfair conduct. *See Smith v. State Farm Mut. Auto. Ins. Co.,* 93 Cal. App. 4th 700,718,415 (2001).

However, Plaintiffs' failure to specify the roles and relationships here, again, results in a failure to plead the claims sufficiently. *See Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 808 (9th Cir. 2007) (defendant's liability for unfair practices claim must specify his personal participation in the unlawful practices). While the conduct might be actionable, the allegations as to why it is actionable against each of these defendants are not enough to state the claim.

Further, the FAC does not address the applicability of out-of-state business practices statutes and any claims filing requirements. Plaintiffs offer no authority to support their argument that pre-filing requirements, such as Texas Insurance Code § 541.255, are not applicable in a class action of this sort. Nor do Plaintiffs address the problem that the non-California statutes would require a pleading that conduct occurred in those states in order for them to apply. *See Amar Shakti Enterprises, LLC v. Wyndham Worldwide, Inc.*, 2011 WL 3687855, at *3 (M.D. Fla. Aug. 22, 2011) (citing cases holding that Florida Deceptive and Unfair Trade Practices Act applies only to conduct entirely within the state); *Sheet Metal Workers Local 441 Health & Welfare Plan v.*

---

[3] A UCL claim predicated on California Insurance Code §790.03, a provision of Unfair Insurance Practices Act, would be barred by *Moradi-Shalal v. Fireman's Fund Insurance Companies,* 46 Cal.3d 287 (1988). *See R & R Sails v. Insurance Company of State of Pennsylvania,* 610 F.Supp.2d 1222 (S.D. Cal. 2009). Plaintiffs here do not plead such a basis for their claim.

United States District Court
Northern District of California

*GlaxoSmithKline, PLC*, 737 F. Supp. 2d 380, 403 (E.D. Pa. 2010) (Arizona Consumer Fraud Act requires some intrastate conduct or effect).  Finally, it appears that the Florida consumer fraud statute does not permit suits against insurers. *Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 397 (7th Cir. 2009) (citing Fla. Stat. Ann. § 501.212(4)).

Thus the motion to dismiss this claim is **GRANTED WITH LEAVE TO AMEND**.  Plaintiffs are given leave to amend to allege facts sufficient to establish the basis for the claim against each defendant.  To the extent that Plaintiffs can state a claim under the other state unfair practices statutes, including allegations of covered conduct and compliance with applicable pre-filing compliance, they are given leave to do so.  To the extent that the named plaintiffs here are asserting a claim under the non-California statutes, the claim should be set forth separately from the UCL claim.

### CONCLUSION

For the foregoing reasons, the motion is **GRANTED WITH LEAVE TO AMEND**.  Any amended complaint must be filed no later than August 15, 2012.  Any response to the amended complaint must be filed no later than August 29, 2012.

**IT IS SO ORDERED.**

Date: August 3, 2012

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**